IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

| | |
|---|---|
| JAMES STEWART, JOHN BARNES, KEEAN SANTEE, DEVIN JOHNSON, SHANE COATS, BRUCE WALLACE, DAVID RUSHING, ROBERT OSWALT, ARTHUR BUCKHAULTON, FREDRETT HICKS, EARL LETT, ARDELL ROSS, DAROLD PAYNE, SHAWN LYONS, DANIEL TOWNSEND, AND COLTYN POPE, on behalf of themselves and all others similarly situated, | CIVIL ACTION NO. 2:25-cv-16-KS-MTP |
| Plaintiffs, | |
| V. | |
| BURL CAIN, IN HIS OFFICIAL AND INDIVIDUAL CAPACITIES; DERIN ROBERTSON, IN HIS OFFICIAL AND INDIVIDUAL CAPACITIES; JOHN SARGENT; AND JOHN AND JANE DOES 1-30, IN THEIR OFFICIAL AND INDIVIDUAL CAPACITIES | |
| Defendants. | |

**CLASS ACTION COMPLAINT**
**(JURY TRIAL REQUESTED)**

Now comes the above-named Plaintiffs, by and through their attorney of record, and file their Complaint against the Defendants listed above. In support of their Complaint, Plaintiffs would show the Court as follows:

**INTRODUCTION**

1.   This is a class action complaint filed for damages on behalf of prisoners that, at all times relevant to this Complaint, were confined to and under the custody of the Mississippi Department of Corrections against Defendants Burl Cain, Derin Robertson, John Sargen, and John and Jane Does 1-15, who allege as follows:

2.   Due to Mississippi's failure to properly train and supervise its employees, namely

1

Correctional Officer Derin Robertson. Based on information and belief, Robertson is a resident of Hinds County, MS.

3. By this action, Plaintiffs seek money damages arising from this incident and subsequent unconstitutional conditions, for themselves and all others similarly situated.

## NATURE OF THE ACTION

4. Plaintiff brings this action under the Mississippi Tort Claims Act and 42 U.S.C. § 1983 for deprivation of their rights secured by the Fourteenth Amendment to the United States Constitution.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over Plaintiff's claims for violations of the Fourteenth Amendment and 42 U.S.C. § 1983 pursuant to 28 U.S.C. §§ 1331 and 1343.

6. Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b)(1).

7. This Court has proper jurisdiction of this matter as this is a class action with an amount in controversy exceeding $5 million, exclusive of interest and costs, pursuant to 28 U.S.C. §§ 1332(d), 1453, and 1711-1715.

## PARTIES

8. Plaintiff incorporates by reference the allegations previously set forth in this complaint.

9. Plaintiffs are all individuals who have been or are currently incarcerated within the Mississippi Department of Corrections ("MDOC"), specifically the South Mississippi Correctional Institution ("SMCI") in Leakesville, Mississippi, who bring this action on behalf of themselves and a class of inmates injured during the incident subject of this Complaint and who are currently confined or were confined within the Mississippi Department of Corrections. Plaintiffs were

ultimately injured in a vehicle collision while being transferred from the Central Mississippi Correctional Facility ("CMCF") to SMCI, and whose civil rights were violated by MDOC's and its agents, representatives, or employees failure to provide adequate medical care which amounted to a deliberate indifference to Plaintiffs' and others' similarly situated medical needs following the collision.

10. Defendant Burl Cain is the Commissioner of the MDOC. By statute, MDOC is "vested with the exclusive responsibility for management and control of the correctional system, and all properties belonging thereto" and "shall be responsible for the management of affairs of the correctional system and for the proper care, treatment, feeding, clothing and management of the offenders confined therein." Miss. Code Ann. § 47-5-23. The Commissioner has the duty and authority to do the following: "Establish the general policy of the Department" (§47-5-20); "implement and administer laws and policy related to corrections" (§47-5-28(a)); and "establish standards… and exercise the requisite supervision as it relates to correctional programs over all state-supported adult correctional facilities[.]" (§47-5-28(b)). As Commissioner, Defendant Hall had the ultimate responsibility for ensuring that all prisons under the jurisdiction of MDOC operate in compliance with state and federal law.

11. Defendant Derin Robertson, at all times relevant to this Complaint, was a correctional officer with MDOC, and was the driver of the bus who ran a redlight and which collided with another vehicle in New Augusta, Mississippi. Based on information and belief, Robertson is a resident of Hinds County, Mississippi.

12. Defendant John Sargent, at all times relevant to this Complaint, was the driver of the vehicle which collided with the MDOC bus driven by Defendant Derin Robertson. Based on information and belief, Sargent is a resident of Forest County, Mississippi.

13. Defendants John Does 1-30 are persons and entities who are responsible for the improper actions against Plaintiffs, including but not limited to the civil rights violations or who are later identified as necessary parties. Upon investigation and discovery, Plaintiff anticipates that other government officials will be named as Defendants as communications and testimony is collected. Plaintiffs expressly reserve the right to substitute persons as Defendants in place of these Defendants.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

14. Plaintiffs have exhausted, or should be deemed to have exhausted, all administrative remedies available to them.

15. The administrative remedy program ("ARP"), which is intended to provide Plaintiffs a mechanism for their grievances to be heard and acted upon within 90 days, is so broken and ineffective that essentially there is no ARP at SMCI.

16. Plaintiffs do not have ready access to ARP forms. The forms must be requested from a guard.

17. If an inmate cannot get a form, the grievance process for that inmate ends immediately. If the inmate does get his hands on a form, he still must have the guard's assistance to collect the form and ensure it reaches the ARP boxes.

18. Guards routinely are witnessed discarding or ripping up completed ARP forms. If a completed form does find its way to the box labeled ARP, it often languishes for months before reaching the ARP administrator, if ever. For the few forms fortunate enough to actually be reviewed by the administrator, most are denied.

19. Notwithstanding the foregoing, Plaintiffs have affirmed by declaration that they collectively have filed ARP grievances on substantially all of the issues touched by this Complaint,

and these grievances either have been denied, never were received, or never were acted upon by the ARP administrator and Defendants.

## FACTUAL ALLEGATIONS

20. Plaintiff incorporates by reference the allegations previously set forth in this complaint.

21. Between 5:00 a.m. and 6:00 a.m. on November 2, 2023, MDOC correctional officers gathered and prepared approximately 96 inmates for transport from Central Mississippi Correctional Facility in Rankin County to South Mississippi Correctional Institution in Greene County.

22. Correctional officers loaded the inmates into two prison transport buses.

23. Despite the freezing temperatures that morning, the officers kept the bus windows open.

24. The inmates had no means of warming themselves — officers provided the inmates with neither warm clothes nor blankets, and the buses had no heaters.

25. Even though the upcoming drive meant crossing several counties along several roads and highways, rather than securing the inmates in place throughout their transport, the inmates were left shackled without any restraint.

26. Neither bus had a restroom. Instead, when inmates needed to relieve themselves, they were made to use a bucket that was neither covered nor secured in place.

27. MDOC officer Derin Robertson drove one bus from CMCF to SMCI, while another, unknown MDOC employee drove the second bus.

28. In addition to the drivers, each bus had at least one other unknown MDOC employee to accompany the driver and inmates during transport.

29. The buses were led by an unknown MDOC employee or other member of law enforcement, who traveled in front of the two buses.

30. As inmates stepped onto Robertson's bus, many commented that Robertson smelled like alcohol.

31. Robertson responded by saying that he had been out the night before and ordered the inmates to be quiet and take their seats.

32. At least one time during the inmates' transportation, Robertson and the other driver stopped the buses because of maintenance issues.

33. Another time, the drivers stopped the buses to purchase food for themselves.

34. The inmates, meanwhile, had no food, and were left chained in the bus. Because of the stops and eagerness to complete the transport, both bus drivers and their escort often sped.

35. In one instance separate from the one subject of this claim, while approaching a red light in Hattiesburg, both buses and their escort sped through an intersection, passing through mere seconds after the light turned from yellow to red.

36. Around 10:45 a.m., the drivers and inmates were in New Augusta in Perry County.

37. As the escort, Robertson, and the bus driver drove the buses along Highway 98 East, they approached the intersection of Highway 98 and Highway 29.

38. As they got closer to the intersection, each driver and the inmates watched as the traffic light for their lanes turned from green to yellow to red.

39. Seeing that they were approaching a busy intersection and that other vehicles in the approaching lane had already come to a complete stop, several inmates yelled for Robertson and the other driver to slow down; however, rather than slowing down and moving through the intersection cautiously, each driver sped up.

40. After the MDOC drivers' traffic light turned red, John Sargent drove his Chevrolet Silverado along Highway 29 towards the intersection.

41. As Sargent approached the traffic light —which was green for him— he saw the escort arrive and stop at the red light.

42. As Sargent crossed, though, Robertson sped in front of him. Sargent's truck struck the right side of the prison bus.

43. As Sargent crashed into the prison bus, the inmates braced themselves as best as they could, but they were shackled and without safety restraints.

44. When the truck crashed into the bus, the inmates were thrown from their seats.

45. Some inmates' heads hit the sides of bus, leaving them with bruises and scrapes on their heads.

46. Those thrown to the floor likewise suffered scrapes and bruises to their arms and legs, with many being drenched in urine from the bucket they had used during transport.

47. The force of the collision caused Robertson to go into the right-hand service lane.

48. As to the second bus driven by the unknown MDOC driver, as Robertson's bus was struck, the unknown MDOC driver swerved his bus to the left, narrowly missing Robertson's bus and other vehicles.

49. As with many of the inmates in Robertson's bus, because of not being secure in their seats and due to the unknown driver's speeding and maneuvers, many were thrown from their seats, causing them to also suffer scrapes and bruises to their arms and legs, with many being drenched in urine.

50. The collision was captured on surveillance footage from an Exxon gas station located at 111 U.S.-98 in New Augusta.

51. Immediately after the crash, Robertson and the other driver drove the buses away from the scene, stopped, and waited for other prison transportation buses to finish transporting the inmates.

52. For the next few hours, while waiting for the other prison buses to arrive, several inmates begged Robertson and the unknown driver to call ambulances for those that were obviously injured in the crash.

53. At some point, medical responders arrived, but as they were getting on the bus to treat the inmates, Robertson and the other driver turned the responders away despite the inmates' pleas and obvious injuries.

54. At some point, other prison buses arrived and transported the inmates to SMCI.

55. When the inmates arrived, they again requested medical treatment; however, MDOC employees denied their requests, processed them into SMCI, and placed each inmate in his designated area. The next day, SMCI medical staff began seeing the inmates.

56. Since the crash, almost every inmate has reported ongoing medical issues, particularly back and neck pain.

57. MDOC and its staff have ignored their complaints and the advice of medical professionals, offering only periodic steroid shots and pain relievers.

58. As their requests for medical treatment have been denied, the inmates have attempted to file ARP forms; however, many of the inmates have been denied the ability to file an ARP form, and instead have been told that the MDOC facility (such as SMCI) has run out of ARP forms.

59. For those that have been able to file an ARP form, those forms have been summarily denied.

60. Meanwhile, the inmates' ongoing medical issues remain ignored and their conditions either remain the same or continue to deteriorate.

61. As a result of Defendants' acts or omissions, Plaintiffs and others similarly situated suffered damages, including physical injury, mental anguish, emotional suffering, and other injuries.

62. All Defendants named in this Complaint share responsibility for violating Plaintiffs' constitutional rights.

## CLASS ACTION ALLEGATIONS

63. Plaintiff incorporates by reference the allegations previously set forth in this complaint.

64. Pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(l), and 23(b)(2), Plaintiffs James Stewart, John Barnes, Keean Santee, Devin Johnson, and Shane Coats (collectively, the "Class Representatives") bring this action on behalf of themselves and a class of all persons who were injured while being transferred from CMCF to SMCI during the times relevant to this complaint.

65. The Class to be certified is defined as follows: "All persons that were within the custody of the Mississippi Department of Corrections and who were injured while being transferred from Central Mississippi Correctional Facility to South Mississippi Correctional Institution on November 2, 2023."

66. The proposed class includes all those then-inmates who were within the custody of MDOC and transferred between CMCF and SMCI during the time relevant, including all those persons unnamed in the first and second bus mentioned above. Therefore, this class is so numerous that joinder of all class members is impracticable.

67. There are multiple questions of law and fact common the entire Class, including:

   a. Whether Defendants' lack of training, lack of supervision, and deliberate indifference to the safety of Plaintiffs and the Class violate the Eighth and Fourteenth Amendments to the United States Constitution;

   b. Whether Defendants were deliberately indifferent to the medical needs of Plaintiffs and the Class;

   c. Whether Defendants actions alleged herein violated the civil rights enumerated herein of Plaintiffs and the Class;

   d. Whether Defendants are liable for state-law claims under the Mississippi Tort Claims Act;

   e. The appropriate measure of damages.

68. Each of the Class Representative Plaintiffs like all putative Class members, were subject to Defendants' acts or omissions. The Class Representative Plaintiffs' claims, therefore, are typical of the Class claims.

69. Each of the Class Representative Plaintiffs will fairly and adequately represent the interest of the class and will diligently serve as class representatives. Their interests are co-extensive with those of the Class and they have retained counsel experienced with class actions alleging constitutional violations at correctional facilities. Putative Class Counsel possesses the experience and resources necessary to fairly and adequately represent the Class.

70. The Class Representative Plaintiffs have been collectively subjected to the Defendants' actions and lack thereof as alleged in this complaint. Their endeavors to receive financial relief are therefore best served through collective class action litigation. Prosecuting separate actions by or against individual class members would create a risk of adjudications with

respect to individual class members that, as a practical matter, would substantially impede the ability of the other members not parties to the individual adjudications to protect their interests.

71. Defendants have acted, or failed to act, on grounds generally applicable to the entire Class.

72. Defendants' acts and omissions make financial relief appropriate as to the Class as a whole.

73. This action is maintainable as a class action because questions of law and fact common to the Class predominate over any questions affecting only individual members of the Class. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Prosecution as a class action will eliminate the possibility for repetitious litigation. Treatment of this case as a class action will permit a large number of similarly situated persons to adjudicate their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would engender. Class treatment will also permit the adjudication of relatively small claims by many class members who otherwise could not afford to litigate a civil rights claim such as that asserted in this Complaint. Plaintiffs are aware of no difficulties which would render the case unmanageable.

## CLAIMS FOR RELIEF

### COUNT 1: 42 U.S.C. § 1893 (Protection from Harm)

74. Plaintiff incorporates by reference the allegations previously set forth in this complaint.

75. By their policies and practices described herein, Defendants subject Plaintiffs to a substantial risk of serious harm by failing to protect them from situations which expose them to being injured and ignoring, by act or omission, emergency situations. These policies and practices

have been and continue to be implemented by Defendants and their agents, officials, employees, and all persons acting in concert with them under color of state law, in their official capacities, and are the cause of Plaintiffs' ongoing deprivation of rights secured by the United States Constitution under the Eighth and Fourteenth Amendments and federal law.

76. Defendants have been and are aware of all of the deprivations complained of herein and have condoned or been deliberately indifferent to such conduct.

## COUNT 2: 42 U.S.C. § 1983 (Deliberate Indifference to Medical Needs)

77. Plaintiff incorporates by reference the allegations previously set forth in this complaint.

78. By their policies and practices described herein, Defendants are responsible for providing basic medical care to Plaintiffs; however, Defendants were deliberately indifferent to the medical needs of Plaintiffs following the aforementioned collision. These policies and practices have been and continue to be implemented by Defendants and their agents, officials, employees, and all persons acting in concert with them under color of state law, in their official capacities, and are the cause of Plaintiffs' ongoing deprivation of rights secured by the United States Constitution under the Eighth and Fourteenth Amendments and federal law.

79. Defendants have been and are aware of all of the deprivations complained of herein and have condoned or been deliberately indifferent to such conduct.

## COUNT 3: Negligence

80. Plaintiffs hereby incorporates by reference and re-allege the information set forth in the preceding paragraphs.

81. Defendants owed Plaintiffs a duty to act in a reasonable manner under the circumstances and provide them with the same degree of care and reasonableness owed to a person

within their care and so as to avoid and prevent injury.

82. Defendants unequivocally departed from the requisite duty of care by failing to protect Plaintiffs from reasonable foreseeable injury by running a redlight and driving in a dangerous manner.

83. As a result of the aforementioned conduct, Plaintiffs suffered damages for which they are be entitled to relief, including but not limited to, permanent physical, emotional, and mental damages, pain and suffering, emotional suffering, psychological trauma, humiliation, shock, embarrassment, loss of enjoyment of life, and such other damages as may be shown at trial.

84. Plaintiffs' injuries were the reasonable foreseeable outcome of Defendants' acts and omissions.

85. WHEREFORE, Plaintiffs respectfully request that the Court:

   a. Certify the action as a class action pursuant to Fed. R. Civ. P. 23 and appoint Plaintiffs as class representatives and the undersigned as class counsel;

   b. Adjudge and declare that the acts, omissions, policies, and practices of Defendants personally, and their agents, employees, officials, and all persons acting in concert with them under color of state law or otherwise as described herein are in violation of the rights of the Plaintiffs under the Cruel and Unusual Punishments Clause of the Eighth Amendment and Fourteenth Amendment to the United States Constitution and federal law;

   c. Issue a judgment against Defendants in an amount to be determined at trial, including compensatory and punitive damages in an amount that is fair, just, and reasonable and will hold Defendants liable for the civil rights violations alleged.

   d. Award Plaintiffs the costs of this suit, and reasonable attorneys' fees and litigation

expenses pursuant to 42 U.S.C. § 1988, and other applicable law; and

e. Grant Plaintiffs such other relief as the Court deems appropriate and just.

86. Plaintiffs hereby demand a jury trial.

Respectfully submitted this day, February 5, 2025.

**PLAINTIFFS**

BY: */s/Arthur H. Calderón*
Arthur H. Calderón, MSB 103917
Calderón & Williams, PLLC
103 S. Court St., Ste. 101
P.O. Box 1818
Cleveland, MS 38732
Phone: 662-545-4445
Fax: 662-796-3689
arthur@msdeltalaw.com
PLAINTIFFS' COUNSEL